Andrea J. Smith (AJS 3471)
Goldberg Segalla, LLP
Attorneys for Defendants
Merv Blank Consulting Group, Inc.
and Merv Blank
170 Hamilton Avenue, Suite 203
White Plains, New York 10601
(914) 798-5400

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LORI A. KASOWITZ,

                           Plaintiff,

     -against-

MERV BLANK CONSULTING GROUP, INC.
and MERV BLANK,

                          Defendants.

-----------------------------------------------------------X

08 CIV. 3032

State Index No.: 2702/08

**JUDGE KARAS**

**NOTICE OF REMOVAL**

Civil No.: _____

TO THE JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK:

The petition of defendants, MERV BLANK CONSULTING GROUP, INC. and MERV BLANK (hereinafter referred to as "MERV BLANK"), by their attorneys, GOLDBERG SEGALLA LLP, respectfully show:

    1.    On or about February 5, 2008, an action was commenced against MERV BLANK in the Supreme Court of the State of New York, County of Westchester, by the filing of a Summons and Complaint (Index No. 2702/08). Pursuant to 28 USC § 1446(a), an index of all copies of all process, pleadings and orders served upon defendants, MERV BLANK CONSULTING GROUP, INC. and MERV BLANK, are attached hereto as "Exhibit A" and a copy of the Summons and Complaint are annexed hereto as Exhibit "B."

2. The Summons and Complaint were purportedly served upon MERV BLANK by delivery of a copy to MERV BLANK at his place of business, located at 21 Franklin Court, Newtown, CT 06470, on or about February 26, 2008.

3. There have been no further proceedings in this action.

4. The action, commenced in Supreme Court of the State of New York, Westchester County, is a civil action with respect to which there exists diversity of citizenship between the plaintiff and MERV BLANK, and the amount in controversy purportedly exceeds the sum of $75,000 exclusive of interest and costs, and there is original jurisdiction in the District Court of the United States as provided in 28 U.S.C. §1332.

5. In the complaint, plaintiff LORI A. KASOWITZ seeks judgment in the amount of $5,347,000 for alleged breach of warranty, negligence and fraud in connection with the design and installation of a heating, ventilation and air conditioning system in plaintiff's home. Plaintiff alleges in the complaint that she is a citizen of the State of New York, residing at Bedford Corners, New York.

6. MERV BLANK now is, and was at the time of the commencement of this litigation, a corporation organized and existing under the laws of Connecticut, with its principal place of business in Connecticut and is not a citizen of the State of New York.

7. Under the provisions of 28 U.S.C. §1441, *et seq.*, MERV BLANK may remove the action from the Supreme Court of the State of New York, Westchester County, to the United States District Court for the Southern District of New York.

8. The date on or before which MERV BLANK is required by the laws of the State of New York to answer or move with respect to plaintiff's complaint has not lapsed. The Summons and Complaint were served upon MERV BLANK by delivering a copy to MERV BLANK in Newton, Connecticut on or about February 26, 2008. The requirements of 28 U.S.C. §1446 have

been satisfied by the filling of this notice within 30 days after MERV BLANK received notice of the action.

9. By reason of the foregoing, MERV BLANK requests that this action be removed from the Supreme Court of the State of New York, County of Westchester, to this Court.

10. Written notice of the filing of this petition will be given to plaintiff as required by law.

11. A true copy of this petition will be filed with the clerk of the Supreme Court of the State of New York, County of Westchester, as required by law.

**WHEREFORE,** MERV BLANK respectfully requests that this action be removed to this Court and that this Court accept jurisdiction of this action, and henceforth that this action be placed on the docket of this Court for further proceedings as though this action had originally been instituted therein.

Dated:   White Plains, New York
         March 25, 2008

                                    GOLDBERG SEGALLA LLP
                                    Attorneys for Defendants
                                    MERV BLANK CONSULTING GROUP, INC.
                                    and MERV BLANK

                                    By: _____
                                        ANDREA J. SMITH (AJS-3471)
                                        Attorneys for Defendants
                                        170 Hamilton Avenue, Suite 203
                                        White Plains, New York 10601-1717
                                        (914) 798-5400
                                        E-mail:asmith@goldbergsegalla.com

TO: KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Attorneys for Plaintiff
1633 Broadway
New York, New York 10019
(212) 506-1700

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LORI A. KASOWITZ,                                         State Index No.: 2702/08

                          Plaintiff,         Civil No.: _____
    -against-

MERV BLANK CONSULTING GROUP, INC.
and MERV BLANK,

                         Defendants.

------------------------------------------------------------X

**INDEX OF PROCESS, PLEADINGS AND ORDERS SERVED
UPON DEFENDANTS, MERV BALNK CONSULTING
GROUP, INC AND MERV BLANK**

      1.    Summons and Verified Complaint dated February 4, 2008, and filed February 5, 2008.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------X
LORI A. KASOWITZ,

                                Plaintiff,

        -against-

MERV BLANK CONSULTING GROUP, INC.
and MERV BLANK,

                               Defendants.
------------------------------------------------------------X

Date purchased

Plaintiff designates
Westchester County
as the place of trial.

The basis of the venue
is C.P.L.R. § 503

**RECEIVED**

FEB -5 2008

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

### SUMMONS

To the above named Defendants:

       YOU ARE HEREBY SUMMONED to answer the Verified Complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Date: February 4, 2008

                                       KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

                                       Mitchell R. Schrage
                                       Sarah Gibbs Leivick
                                       1633 Broadway
                                       New York, New York 10019

                                       Attorneys for Plaintiff

TO:

Merv Blank Consulting Group, Inc.
21 Franklin Court
Newtown, Connecticut 06470

Merv Blank
21 Franklin Court
Newtown, Connecticut 06470

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------x
LORI A. KASOWITZ,

       Plaintiff,

-against-

MERV BLANK CONSULTING GROUP, INC.
and MERV BLANK,

       Defendants.
-------------------------------------------------------x

Index No. 2702/08

**VERIFIED COMPLAINT**

RECEIVED
FEB -5 2008

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

  Plaintiff Lori A. Kasowitz ("plaintiff"), by her attorneys, Kasowitz, Benson, Torres & Friedman LLP, for her complaint against defendants Merv Blank Consulting Group, Inc. ("MBCG") and Merv Blank ("Blank") (collectively "defendants"), alleges as follows:

**Preliminary Statement**

  1. This action arises from defendants' egregious breach of contract, breach of warranty, negligence and fraud in connection with the design and installation of heat, ventilation and air conditioning systems in both plaintiff's home (the "House") and guest cottage (the "Cottage") (each an "HVAC system" and collectively, the "HVAC systems"), located in Bedford Corners, New York.

  2. Relying on defendants' false representations, plaintiff agreed to enter into two contracts with MBCG for plaintiff's purchase and defendants' design, sale and installation of state-of-the-art residential HVAC systems that would heat, ventilate and cool the House (the "Contract") and the Cottage (the "Cottage Contract"), and would be appropriate for the nature and character of the House and the Cottage. In breach of the parties' contracts, defendants delivered substandard, deficient and defective commercial HVAC systems which were not

structural and design defects, and were installed in a negligent and defective manner. The HVAC system installed in the House by defendants broke down repeatedly and continually; it was vastly inefficient and incapable of adequately heating and cooling the House; and it operated in a manner that caused mold and other damage to the House. The HVAC system installed in the Cottage by defendants did not properly distribute heat and air conditioning such that both floors of the Cottage could be adequately heated or cooled.

3. Despite plaintiff's repeated requests, defendants failed to address and remedy the deficiencies in the HVAC systems. Ultimately, defendants abandoned the project, leaving plaintiff with a non-functioning HVAC system at the House, and a defective HVAC system at the Cottage. As a result of defendants' conduct, plaintiff was forced to hire contractors and consultants to perform extensive repair and replacement work, including redesigning and rewiring the system, replacing system components, and remediating the mold damage. Plaintiff has been and will continue to be required to expend significant amounts of money to alleviate and rectify the deficiencies in the HVAC systems and the damage they have caused.

### Parties

4. Plaintiff Lori A. Kasowitz is an individual residing in the State of New York and is the owner of the House.

5. Defendant Merv Blank Consulting Group, Inc. is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business at 21 Franklin Court, Newtown, Connecticut 06470.

6. Defendant Merv Blank is an individual residing in the State of Connecticut and is the owner and principal operating officer of Merv Blank Consulting Group, Inc.

7.  This Court has jurisdiction over defendants pursuant to C.P.L.R. § ___ defendants transact and do business in New York.

8.  Venue is proper in Westchester County pursuant to C.P.L.R. § 503 in that the House and Cottage are located in this county and plaintiff's causes of action arose in this county.

### Factual Allegations

**A.  Relying on Defendants' False Representations, Plaintiff Enters Into Contracts with MBCG**

9.  On or about September 27, 2005, Blank provided plaintiff with a proposal in which MBCG made numerous representations to her to induce her to accept the proposal, concerning, among other things, the work that MBCG would perform in, among other things, designing and installing the HVAC system at the House and MBCG's ability to complete that work in a workmanlike manner.

10. Those representations included, among many others:

(a) "A new 35 ton Carrier Chiller will be installed at the right side of the house where the five condensing units are presently located. Chilled water lines will be installed to supply all of the new air handlers. This will allow for heating or cooling to be provided simultaneously to any of the various areas."

(b) "We will re-pipe the two boilers to form a common header and provide staged operation as controlled from an outdoor thermostat."

(c) "We will furnish insulated copper chilled water piping and hot water piping to each of the eleven air handlers."

(d) "We will furnish ductwork required to distributed conditioned air as outlined."

(e) "Cooling: This Contractor guarantees that the equipment as furnished and installed will maintain an average temperature of 76°F dry bulb and an average relative humidity of 50% when the outside conditions are 91°F dry bulb and 75°F wet bulb."

3

(f) "After installation, a qualified representative will give instructions on the use of the equipment."

(g) "All equipment, material and labor furnished by us will bear a one-year warranty from the date of installation against defects in workmanship and material."

11. On or about September 27, 2005, Blank also made numerous oral representations to plaintiff to induce her to accept the proposal, including, among others, that the HVAC system designed by Blank was appropriate and adequate for the House, and that the HVAC system once installed, would be a state-of-the-art, properly and efficiently installed residential HVAC system, which would adequately heat and cool the House in a manner appropriate for the nature and character of the residence.

12. In reliance on defendants' representations, plaintiff, by accepting the proposal, entered into the Contract with MBCG. On or around September 28, 2005, Stephen Kasowitz, acting as plaintiff's agent, signed the Contract, pursuant to which MBCG agreed to perform the work described therein and plaintiff agreed to pay MBCG $160,000. Upon execution of the Contract, plaintiff paid MBCG a deposit of $25,000, with the balance to be paid in progress payments in two-week intervals.

13. On or about October 25, 2005, plaintiff and MBCG entered into the Cottage Contract, under which MBCG agreed to replace the existing heating system in the Cottage, and plaintiff agreed to pay MBCG $20,000, with 25% due on approval and the balance due upon completion. In the Cottage Contract, MBCG represented that it would modify the existing HVAC system in a workmanlike manner so as to allow for proper heating and cooling of the Cottage, in accordance with the nature and character of the Cottage. Plaintiff agreed to enter into the Cottage Contract in reliance on the representations made in connection with the Contract and the Cottage Contract. On or about October 31, 2005, plaintiff paid MBCG a $5,000 deposit.

4

14. Plaintiff subsequently paid MBCG an additional $~~~~~~ under the terms of the Contract; and an additional $15,000 for a total of $20,000, under the terms of the Cottage Contract.

15. As set forth more fully below, the representations made by defendants to induce Plaintiff to accept the Contract and the Cottage Contract were false.

B. **Defendants Install Defective HVAC Systems**

16. During October 2005, defendants began work on the HVAC system at the House. During the summer of 2006, serious defects and deficiencies became apparent in the HVAC system.

17. Plaintiff called Blank and/or MBCG several times as result of the problems with the HVAC system. In response, Blank or MBCG's agent came to the House, but failed to address or correct the defective conditions. On one such occasion, MBCG's agent advised plaintiff that she would never be able to cool the House below 75 degrees Fahrenheit.

18. As a result of defendants' defective work, in or around the fall of 2006, plaintiff retained an HVAC service contractor (the "Contractor") to evaluate and repair the HVAC system. Due to the numerous flaws in the HVAC system and in order to evaluate the full extent of the problems, the Contractor in turn retained an HVAC engineer (the "Engineer") to perform a technical evaluation of the system.

19. On or about September 7, 2007, the Contractor submitted a report to plaintiff detailing the "abundant flaws" in the HVAC system installed by defendants. These abundant flaws, among many others, included:

(a) The HVAC system was a commercial system and was not recommended for residential use.

5

the chiller was placed too close to the House, making the noise level unbearable. The chiller should have been placed on vibration eliminators to reduce the noise, but it was not.

(c)   The HVAC system was supposed to include a primary chilled water pump and a second chilled water pump, but a secondary pump was not installed.

(d)   The chilled water system was missing an expansion tank, relief valve, air eliminator, automatic water feeder, and temperature and pressure gauges.

(e)   The main pump header should have been insulated, and the absence of insulation caused water to leak onto the floor continuously, which will lead to imminent water damage to the other electrical equipment in the area.

(f)   The antifreeze ratio for the chiller was too high at 100%, and should be drained and refilled, so that the ratio was no higher than 50%.

(g)   The air handler units lacked the proper wiring and controls to run independently and instead were running at the same time, which resulted in high energy costs and the inability to achieve the desired temperature.

(h)   The air handlers were not compatible with the thermostats, and the air handlers needed to be completely rewired and missing components needed to be installed.

(i)   There were only two steam humidifiers installed when nine total were needed to reach the proper humidity set point. The humidifiers were also not wired to an outdoor air sensor as they should have been as per the original equipment manufacturer.

(j)   The chilled water lines throughout the whole residence were not insulated properly or not insulated at all, which caused water damage to ceilings and mold growing in the crawl spaces in the basement.

(k)   The piping in the crawl space was inadequate to properly dispense water and there were no balancing valves for the proper direction of the water flow.

(l)   There were no outdoor sensors to control the boilers depending on demand or outdoor temperatures, as were supposed to be installed according to the Contract. The lack of sensors caused the heating system to run constantly.

(m)   The duct work in the kitchen was undersized for the HVAC system, which caused the duct work to insufficiently receive and incorrectly distribute air.

system at the House did not meet the basic requirements for an HVAC installation, the equipment was improper for a residence, the system was inefficient due to the numerous installation defects, and the design and installation were inadequate to accomplish proper heating and cooling.

21.     With respect to the Cottage, the Contractor found that the first floor of the Cottage did not receive proper heat and air conditioning because defendants failed to install balancing dampers to regulate the flow of air in the Cottage.

22.     Plaintiff has had to pay $175,000 in order to identify and begin to correct the numerous defects and shortcomings in the HVAC systems defendants installed.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)
### (Against MBCG)

23.     Plaintiff repeats and realleges paragraphs 1 through 22 with the same force and effect as if fully set forth herein.

24.     MBCG has materially breached the express and implied terms of the Contract, by, among other things:

> (a)     failing to design and install the proper type of HVAC system for a residence and instead installing a commercial system;
>
> (b)     failing to complete the retrofit and upgrade of the HVAC system in accordance with the terms of the Contract;
>
> (c)     failing to install an HVAC system with the proper wiring so that either the heat or air conditioning could be accessed at any time;
>
> (d)     failing to install an HVAC system that could heat and cool to appropriate maximum and minimum temperatures;
>
> (e)     installing only one chiller for the entire property;

 (f) failing to install a secondary chilled water pump;

 (g) failing to install an expansion tank, relief valve, air eliminator, automatic water feeder, and temperature and pressure gauges in the chilled water system;

 (h) failing to insulate the main pump header and the chilled water lines;

 (i) failing to install the proper ratio of antifreeze in the chiller;

 (j) failing to install thermostats that were compatible with the air handlers;

 (k) installing air handlers with improper wiring and missing components;

 (l) failing to install the required number of steam humidifiers;

 (m) failing to install adequate piping in the crawl space to properly dispense water and balancing valves to properly direct water flow;

 (n) failing to install outdoor sensors to control the boilers depending on demand or outdoor temperature; and

 (o) failing to install properly sized duct work in the kitchen;

 (p) failing to install copper piping throughout the HVAC system as required by the Contract; and

 (q) failing to install proper insulation or any insulation throughout the House.

25. MBCG has materially breached the express and implied terms of the Cottage Contract, by, among other things, failing to install balancing dampers to allow the proper distribution of heat and air conditioning in the Cottage.

26. Plaintiff has performed all of her obligations under the Contract and Cottage Contract.

27. The Contract and Cottage Contract contain, and MBCG breached, an implied covenant of good faith and fair dealing, that obligates MBCG to act in good faith and avoid acting in a manner that would deprive plaintiff of the right to receive the benefits of the Contract and Cottage Contract.

28. As a result of MBCG's material breaches of the Contract and Cottage Contract, plaintiff has suffered damages in an amount to be determined at trial, but no less than $347,000.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Express and Implied Warranty)
### (Against MBCG)

29. Plaintiff repeats and realleges paragraphs 1 through 22 and 24 through 27 with the same force and effect as if fully set forth herein.

30. MBCG made express and implied warranties to plaintiff in the Contract and Cottage Contract as to quality and performance of the design and installation of the HVAC systems, including, among others, warranties that the HVAC systems as design and installed were and would be reasonably fit for their intended purpose and that the HVAC systems were and would be installed in accordance with the plans and specifications contained in the Contract and Cottage Contract.

31. MBCG breached the aforesaid express and implied warranties by failing to design and install the HVAC systems in accordance with the plans and specifications contained in the Contract and Cottage Contract, by failing to employ good construction and installation practices, and by providing plaintiff HVAC systems with the defects and deficiencies set forth above.

32. Plaintiff has made repeated demands on MBCG to correct the defects and deficiencies, as more fully set forth herein, of which MBCG is or should be aware, but to date MBCG has refused and/or failed to properly repair same.

33. As a direct result of MBCG's material breaches of the express and implied warranties, plaintiff has suffered damages in an amount to be determined at trial, but no less than $347,000.

9

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Negligence)**
**(Against Defendants)**

34. Plaintiff repeats and realleges paragraphs 1 through 21, 24 through 27 and 30 through 32 with the same force and effect as if fully set forth herein.

35. Defendants had a duty to plaintiff to perform their work in connection with the design and installation of the HVAC systems with reasonable care. Defendants breached that duty.

36. Defendants were grossly negligent in the performance of their work in that they designed and installed the HVAC systems with reckless disregard for the rights and welfare of plaintiff.

37. All of the defective conditions set forth herein occurred by reason of the negligence of defendants and their agents, and without any negligence on the part of plaintiff contributing thereto.

38. As a proximate result of defendants' negligence, plaintiff has suffered damages in an amount to be determined at trial, but no less than $347,000.

39. Defendants' acts were committed knowingly, intentionally and with a reckless indifference towards plaintiff's rights. Accordingly, plaintiff is entitled to recover punitive damages in an amount to be determined at trial, but no less than $1,000,000.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Common Law Fraud)**
**(Against Defendants)**

40. Plaintiff repeats and realleges paragraphs 1 through 21, 24 through 27, 30 through 32 and 35 through 37 with the same force and effect as if fully set forth herein.

41. Defendants made material misrepresentations to induce plaintiff to enter into the Contract and the Cottage Contract. At the time these representations were made, defendants knew or were reckless in not knowing that they were false. To the extent that the misrepresentations related to their performance, defendants knew or were reckless in not knowing that defendants did not intend to perform and were not capable of performing their obligations as set forth in the Contract and the Cottage Contract.

42. Throughout the course of the installation of the HVAC systems, defendants either knowingly and/or recklessly concealed from plaintiff that design defects and construction deficiencies plagued the project.

43. Throughout the course of the installation of the HVAC systems, defendants continued to make additional misrepresentations concerning repair work, the quality of the construction, the level of workmanship and adherence to standard customs and practices.

44. Defendants intended that plaintiff rely on their fraudulent misrepresentations and omissions, and plaintiff reasonably relied on defendants' misrepresentations and omissions to her detriment.

45. As a direct result of defendants' fraud and deceit, plaintiff has suffered damages in an amount to be determined at trial, but no less than $347,000.

46. Defendants' acts were committed knowingly, intentionally and with a reckless indifference towards plaintiff's rights. Accordingly, plaintiff is entitled to recover punitive damages in an amount to be determined at trial, but no less than $1,000,000.

(i) on the first and second causes of action, compensatory damages in an amount to be determined at trial, but no less than $347,000;

(ii) on the third and fourth causes of action, compensatory damages in an amount to be determined at trial, but no less than $347,000 and punitive damages in an amount to be determined at trial, but no less than $1,000,000; and

(iii) interest, costs, attorneys' fees and such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 4, 2008

Respectfully submitted,

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Mitchell R. Schrage
Sarah Gibbs Leivick
1633 Broadway
New York, New York 10019

**Attorneys for Plaintiff**

12

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

LORI A. KASOWITZ, being duly sworn, deposes and says:

I am the plaintiff in the action herein. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true to my own knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

Dated: New York, New York
       February ___, 2008

_____
Lori A. Kasowitz

Sworn to before me this
___ day of February 2008.

_____
Notary Public

## CERTIFICATE OF INSURANCE

This certifies that:
- ☒ STATE FARM FIRE AND CASUALTY COMPANY, Bloomington, Illinois
- ☐ STATE FARM GENERAL INSURANCE COMPANY, Bloomington, Illinois
- ☐ STATE FARM FIRE AND CASUALTY COMPANY, Scarborough, Ontario
- ☐ STATE FARM FLORIDA INSURANCE COMPANY, Winter Haven, Florida
- ☐ STATE FARM LLOYDS, Dallas, Texas

Insured the following policyholder for the coverages indicated below:

**Name of policyholder:** CARL J. TEFFERE
**Address of policyholder:** 53 [illegible] DR, BREWSTER, NY 10509
**Location of operations:** SAME
**Description of operations:** CONTRACTORS

| POLICY NUMBER | TYPE OF INSURANCE | POLICY PERIOD Effective Date / Expiration Date | LIMITS OF LIABILITY (at beginning of policy period) |
|---|---|---|---|
| 90-BR-3811-6 F | Comprehensive Business Liability<br>This insurance includes:<br>☒ Products - Completed Operations<br>☒ Contractual Liability<br>☐ Underground Hazard Coverage<br>☒ Personal Injury<br>☒ Advertising Injury<br>☐ Explosion Hazard Coverage<br>☐ Collapse Hazard Coverage<br>☒ MEDICAL EXPENSE | 06/25/05  06/25/06 | BODILY INJURY AND PROPERTY DAMAGE<br>Each Occurrence $1,000,000<br>General Aggregate $2,000,000<br>Products - Completed Operations Aggregate $2,000,000<br>$5,000 |
| 9R-CQ-5039-0 F | EXCESS LIABILITY<br>☒ Umbrella<br>☐ Other | 07/01/05  07/01/06 | BODILY INJURY AND PROPERTY DAMAGE (Combined Single Limit)<br>Each Occurrence $1,000,000<br>Aggregate $1,000,000 |
| 94-GR-0360 ? ? | Workers' Compensation and Employers Liability | 06/25/05  06/25/06 | Part 1 STATUTORY<br>Part 2 BODILY INJURY<br>Each Accident $100,000<br>Disease Each Employee $100,000<br>Disease - Policy Limit $500,000 |

| POLICY NUMBER | TYPE OF INSURANCE | POLICY PERIOD Effective Date / Expiration Date | LIMITS OF LIABILITY (at beginning of policy period) |
|---|---|---|---|
| 98-BR-0803-5 F | OTHER BUS LIABILITY | 07/01/04  07/01/05 | STACK SPACER |
| 989 4492-F36-52E | AUTO | 12/12/04  12/16/05 | $300,000 |

Name and Address of Certificate Holder:

ADD ADDITIONAL INSURED:
KASOWITZ, LORI & MARC
37 OREGON RD.
BEDFORD, NY 10506

ALSO ADDITIONAL INSURED:
WEST MANOR CONSULTING GROUP
31 FRANKLIN CT
NEWTOWN, CT 06470

Signature of Authorized Representative
09/27/2005  Date

AFO Code  TYP STEAR  52-1717
WHITE PLAINS  16.2
GOLDEN TRIANGLE